IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

STEFAN JOHN, EMIL BROWNE, KEVIN HENRY,                    :    **INDEX NO.**
KWESI HENRY, and COREY JONES,                            :    **ECF CASE**
                                                          :
                                                          :
                                                          :
                                    Plaintiffs,           :    **JURY TRIAL DEMANDED**

                                                          **CV 12    3134**

                  - against -                             :    **COMPLAINT**

THE CITY OF NEW YORK, a municipal entity,                :
DETECTIVE DARNAY HARRIS,                                  :    **DEARIE, J.**
DETECTIVE JAMES RIVERA and JOHN DOE                       :
POLICE OFFICERS 1-9, Defendant                            :
SUPERVISING OFFICERS JOHN DOES 1-5,                      :
COURT-ASSIGNED POLICE OFFICERS                            :    **GOLD, M.J.**
JOHN DOES 1-5,                                            :
                                    Defendants.           :
----------------------------------------------------------------------X

FILED
CLERK
2012 JUN 22  PM 12: 34
U.S. DISTRICT COURT
EASTERN DISTRICT
NEW YORK

        Plaintiffs STEFAN JOHN, EMIL BROWNE, KEVIN HENRY, KWESI HENRY

and COREY JONES, by their attorney, DAVID A. THOMPSON, of STECKLOW

COHEN AND THOMPSON, complaining of the defendants, respectfully allege as

follows upon information and belief:

**I.    PRELIMINARY STATEMENT**

        1.      Plaintiffs STEFAN JOHN, EMIL BROWNE, KEVIN HENRY, KWESI

HENRY and COREY JONES bring this action for compensatory damages, punitive

damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for

violations of their civil rights, as said rights are secured by said statutes and by the

Constitutions of the State of New York and of the United States.

        2.      Plaintiffs STEFAN JOHN, EMIL BROWNE, KEVIN HENRY, KWESI

HENRY, and COREY JONES are young, law-abiding African American men.  On June

23, 2011, they were spending time at the home of Plaintiff Kevin Henry playing video games and socializing. Without warning, and without a warrant or probable cause, a squad of NYPD officers, including Defendants DETECTIVE DARNAY HARRIS, DETECTIVE JAMES RIVERA and JOHN DOE POLICE OFFICERS 1-9, broke down the door of Kevin Henry's apartment with their guns drawn. They forced the Plaintiffs to lie face down on the ground. They handcuffed the Plaintiffs, and reached into their clothing to search them, physically touching and fondling their genitals. Detectives Darnay Harris and James Rivera failed to find any contraband or other reason for their invasion. To protect themselves, they arrested everyone present (the Plaintiffs) and took them into custody. Detectives Darnay Harris and James Rivera swore out false criminal complaints and other supporting documentation alleging that the Plaintiffs possessed small quantities of marijuana.

3.    While in custody, COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 placed Plaintiffs in a holding cell awaiting arraignment together with detainees who, from the images and symbols on their tattoos, were apparently Nazi-sympathizers or white supremacists. These detainees viciously attacked Plaintiff STEFAN JOHN, breaking his hand. COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 deliberately delayed coming to Stefan John's aid. Because of his broken hand, Stefan John was unable to work at his job as a plumber's assistant, and lost that job.

4.    Defendant THE CITY OF NEW YORK and Defendant SUPERVISING OFFICERS JOHN DOES 1-5 have direct supervisory authority over DETECTIVE DARNAY HARRIS, DETECTIVE JAMES RIVERA and JOHN DOE POLICE OFFICERS 1-9, and failed to properly supervise, train, and control these officers. In

2

particular, Detectives Darnay Harris and James Rivera have an extensive record of misconduct, including 20 civil lawsuits alleging wrongful arrest, excessive force, and fabricating evidence, for which nearly a million dollars in damages have been paid out to date. The City and these individual supervisory defendants have

5.      These law-abiding young men were terrorized and held in unlawful confinement, and were subjected to baseless and perjured criminal accusations by the Defendants. They were groped and humiliated. Stefan John suffered a serious physical injury and lost his job as a result.

6.      Plaintiffs STEFAN JOHN, EMIL BROWNE, KEVIN HENRY, KWESI HENRY and COREY JONES have suffered from Defendants' wonton, reckless and and malicious conduct, and are entitled to both compensatory and punitive damages.

## II.     JURISDICTION

7.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

8.      Plaintiffs STEFAN JOHN, EMIL BROWNE, KEVIN HENRY, KWESI HENRY and COREY JONES further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

### III.   VENUE

9.     Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

### IV.   JURY DEMAND

10.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V.   THE PARTIES

11.     Plaintiff STEFAN JOHN is an African-American male who at all relevant times was and is a resident of the State of New York, in Kings County.

12.     Plaintiff EMIL BROWNE is an African-American male who at all relevant times was and is a resident of the State of New York, in Kings County.

13.     Plaintiff KEVIN HENRY is an African-American male who at all relevant times was and is a resident of the State of New York, in Kings County.

14.     Plaintiff KWESI HENRY is an African-American male who at all relevant times was and is a resident of the State of New York.

15.     Plaintiff COREY JONES is an African-American male who at all relevant times was and is a resident of the State of New York, in Kings County.

16.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.  Defendant THE CITY OF NEW YORK maintains the New York City Police Department (the "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections

4

of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

17.    Each and all of the acts of the Defendant Police Officers alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

18.    At all times relevant to this action, the individually named Defendant DETECTIVE DARNAY HARRIS was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties. Plaintiffs sue Defendant DETECTIVE DARNAY HARRIS in both his individual and official capacities.

19.    At all times relevant to this action, the individually named Defendant DETECTIVE JAMES RIVERA was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties. Plaintiffs sue Defendant DETECTIVE JAMES RIVERA in both his individual and official capacities.

20.    At all times hereinafter mentioned, the Defendant POLICE OFFICERS JOHN DOES 1-9 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties. Plaintiffs sue these Defendants in both their individual and official capacities.

21.    At all times hereinafter mentioned, the Defendant SUPERVISING OFFICERS JOHN DOES 1-5 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties. Plaintiffs sue these Defendants in both their individual and official capacities.

22.     At all times hereinafter mentioned, the Defendant SUPERVISING OFFICERS JOHN DOES 1-5 possessed supervisory authority over DETECTIVE DARNAY HARRIS, DETECTIVE JAMES RIVERA, and POLICE OFFICERS JOHN DOES 1-9, and were charged as with the supervision of these officers as a duty of their employment.

23.     At all times hereinafter mentioned, the Defendant COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 were duly sworn police officers of said department acting under the supervision of said department and according to their official duties.  Plaintiffs sue Defendant COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 in both their individual and official capacities.

24.     At least thirty days have elapsed since the demand, claim or claims upon which this action is founded were presented to a director or officer of THE CITY OF NEW YORK and the CITY has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

**VI.     FACTS COMMON TO ALL CLAIMS**

25.     At all relevant times, Plaintiff STEFAN JOHN resided with his family at 1658 Dean Street, in Brooklyn.

26.     At all relevant times, Plaintiff KEVIN HENRY resided at 1664 Dean Street, in Brooklyn.

27.     Plaintiff KEVIN HENRY lived in the basement apartment at 1664 Dean Street.

28.     Plaintiff STEFAN JOHN and Plaintiff KEVIN HENRY were neighbors, and friends.

6

29.     On the afternoon of June 23, 2011, Plaintiffs KEVIN HENRY, KWESI HENRY, STEFAN JOHN, EMIL BROWNE, and COREY JONES were at Kevin Henry's apartment.

30.     The young men were playing video games in the living room.

31.     At approximately 2:00 PM, a squad of officers of the NYPD broke down the door of Plaintiff KEVIN HENRY's apartment without warning.

32.     The officers used a metal battering ram to break down the door.

33.     The officers entered the apartment with their guns drawn.

34.     These officers included Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and Defendant JOHN DOE POLICE OFFICERS 1-9.

35.     The officers pointed their firearms at Plaintiffs KEVIN HENRY, KWESI HENRY, STEFAN JOHN, EMIL BROWNE, and COREY JONES.

36.     All five young men in the apartment immediately got on the floor.

37.     Plaintiffs KEVIN HENRY, KWESI HENRY, STEFAN JOHN, EMIL BROWNE, and COREY JONES were handcuffed.

38.     They were left handcuffed on the floor of Plaintiff KEVIN HENRY's apartment for approximately 20 minutes.

39.     During this time, the officers conducted invasive searches of each of the young men present.

40.     Two of the officers searching the young men put their hands underneath the young men's clothing, including their underwear, and touched and searched their genitals.

7

41.     The officer who performed this invasive search of Plaintiffs EMIL BROWN and STEFAN JOHN was Defendant DETECTIVE DARNAY HARRIS.

42.     The officer who performed this invasive search of Plaintiffs KEVIN HENRY and KWESI HENRY was Defendant DETECTIVE JAMES RIVERA.

43.     Plaintiffs were then brought to a standing position and searched again.

44.     Plaintiffs were taken out of the building in handcuffs, while the Plaintiffs' neighbors watched.

45.     Plaintiffs were left in a hot van with no ventilation for a long period of time.

46.     Plaintiffs were taken to the 77th Precinct.

47.     At the 77th Precinct, the Plaintiffs were strip searched.

48.     The Plaintiffs were compelled to remove all their clothing.

49.     The Plaintiffs were compelled to squat while nude and cough.

50.     Each of the Plaintiffs was fingerprinted and photographed.

51.     The Plaintiffs were held at the 77th precinct for several hours.

52.     The Plaintiffs were then removed from the 77th Precinct and taken to Central Booking.

53.     The Plaintiffs were photographed and eye scanned.

54.     The Plaintiffs were held at Central Booking for approximately an additional 24 hours.

55.     In total, the Plaintiffs were held in custody for approximately 34 hours.

8

### DEFENDANTS DARNAY HARRIS AND JAMES RIVERA BROUGHT FALSE CHARGES AGAINST THE PLAINTIFFS

56.     Defendant DETECTIVE JAMES RIVERA was Plaintiff STEFAN JOHN's arresting officer.

57.     Plaintiff STEFAN JOHN was charged with unlawful possession of marijuana (CPL 221.05).

58.     Defendant DETECTIVE JAMES RIVERA signed and swore to the criminal complaint.

59.     Defendant DETECTIVE JAMES RIVERA stated that DETECTIVE DARNAY HARRIS provided the factual information that formed the basis of Officer Rivera's belief as to the statements supporting the complaint.

60.     Defendant DETECTIVE JAMES RIVERA stated that Defendant DETECTIVE DARNAY HARRIS informed him that Det. Harris recovered marijuana in a ziplock bag from Plaintiff STEFAN JOHN's hand.

61.     Defendant DETECTIVE DARNAY HARRIS signed and swore to a field test report, however, in which he stated that he recovered the marijuana in a ziplock bag from the floor.

62.     Both statements were false: Plaintiff STEFAN JOHN possessed no marijuana of any kind.

63.     Defendant DETECTIVE James Rivera was Plaintiff KEVIN HENRY's arresting officer.

64.     Plaintiff KEVIN HENRY was charged with unlawful possession of marijuana (CPL 221.05).

9

65.     Defendant DETECTIVE JAMES RIVERA signed and swore to the criminal complaint.

66.     Defendant POLICE OFFICER JAMES RIVERA stated that DETECTIVE DARNAY HARRIS provided the factual information that formed the basis of Officer Rivera's belief as to the statements supporting the complaint.

67.     Defendant POLICE OFFICER JAMES RIVERA stated that Defendant DETECTIVE DARNAY HARRIS informed him that Det. Harris recovered marijuana in the form of a cigarette from the floor.

68.     Defendant DETECTIVE DARNAY HARRIS signed and swore to a field test report, in which he stated that he recovered a marijuana cigarette from the floor.

69.     These statements were false: Plaintiff KEVIN HENRY possessed no marijuana of any kind.

70.     Defendant Police Officer James Rivera was Plaintiff KWESI HENRY's arresting officer.

71.     Plaintiff KWESI HENRY was charged with criminal possession of marijuana in the fifth degree (CPL 221.10(1)) and unlawful possession of marijuana (CPL 221.05).

72.     Defendant POLICE OFFICER JAMES RIVERA signed and swore to the criminal complaint.

73.     Defendant DETECTIVE JAMES RIVERA stated that DETECTIVE DARNAY HARRIS provided the factual information that formed the basis of Officer Rivera's belief as to the statements supporting the complaint.

74.    Defendant DETECTIVE JAMES RIVERA stated that Defendant DETECTIVE DARNAY HARRIS informed him that Det. Harris saw Plaintiff KWESI HENRY holding a burning marijuana cigarette in the stairwell outside the Plaintiffs' apartment.

75.    Defendant DETECTIVE DARNAY HARRIS signed and swore to a field test report, in which he stated that he recovered a marijuana cigarette from Plaintiff KWESI HENRY's hand.

76.    These statements were false: Plaintiff KWESI HENRY possessed no marijuana of any kind.

77.    Defendant DETECTIVE JAMES RIVERA was Plaintiff EMIL BROWNE's arresting officer.

78.    Plaintiff EMIL BROWNE was charged with unlawful possession of marijuana (CPL 221.05).

79.    Defendant DETECTIVE JAMES RIVERA signed and swore to the criminal complaint.

80.    Defendant DETECTIVE JAMES RIVERA stated that DETECTIVE DARNAY HARRIS provided the factual information that formed the basis of Officer Rivera's belief as to the statements supporting the complaint.

81.    Defendant DETECTIVE JAMES RIVERA stated that Defendant DETECTIVE DARNAY HARRIS informed him that Det. Harris recovered marijuana in the form of a cigarette from Plaintiff EMIL BROWNE's hand.

82.     Defendant DETECTIVE DARNAY HARRIS signed and swore to a field test report, in which he stated that he recovered a marijuana cigarette from Plaintiff EMIL BROWNE's hand.

83.     These statements were false: Plaintiff EMIL BROWNE possessed no marijuana of any kind.

84.     The ARRESTING DEFENDANTS also made false statements of fact, and fabricated evidence, to bring criminal charges against Plaintiff COREY JONES.

### ALL CHARGES AGAINST PLAINTIFFS WERE DISMISSED

85.     The Plaintiffs were compelled to return to court on numerous occasions to dispute these baseless charges.

86.     After several months, all charges against the Plaintiffs were **dismissed.**

### DEFENDANTS UNLAWFUL DETENTION OF STEFAN JOHN CAUSED HIM SEVERE PHYSICAL UINJURY

87.     While he was held in custody in Central Booking, two white male detainees attacked Plaintiff STEFAN JOHN without provocation.

88.     These white male detainees were tattooed with white-supremacist and/or Nazi imagery and symbols.

89.     The corrections officers on duty delayed in stopping this vicious attack.

90.     As a result of the attack and the officers' delay, Plaintiff STEFAN JOHN broke a bone in his right hand.

91.     As a further consequence of this injury, Plaintiff STEFAN JOHN lost his job.

92.     Plaintiff STEFAN JOHN was employed as a plumber's mechanic with a construction company.

93.     Plaintiff STEFAN JOHN earned approximately $150 per day, and worked approximately five days a week.

94.     As a result of the injuries he sustained as a result of this incident, Plaintiff STEFAN JOHN was unable to return to work for an extended period of weeks.

95.     As a result, Plaintiff STEFAN JOHN's employer replaced him at his position with someone else, and Stefan John lost his job.

**VII.   FACTS SUPPORTING THE PLAINTIFF'S _MONELL_ CLAIM AND CLAIMS FOR NEGLIGENT HIRING, TRAINING AND SUPERVISION**

<u>DEFENDANT THE CITY OF NEW YORK</u>
<u>SHIELDS BAD COPS LIKE DEFENDANTS DETECTIVE DARNEY HARRIS</u>
<u>AND DETECTIVE JAMES RIVERA</u>

96.     Defendant THE CITY OF NEW YORK protects and isolates members of the NYPD from any personal liability for civil damages when officers violate the constitutional rights of citizens, by indemnifying officers against whom damages are awarded.

97.     By so doing, Defendant THE CITY OF NEW YORK removes and neutralizes the strong deterrent effect such awards would otherwise have on NYPD officers guilty of misconduct.

98.     Furthermore, Defendant THE CITY OF NEW YORK and the NYPD do not discipline officers for incurring civil liability resulting from official misconduct.

99.     Shielded by these policies of Defendant THE CITY OF NEW YORK, officers commit misconduct again and again.

100.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA are shocking examples of this practice.

101.    Between them, the two officers are or were defendants in TWENTY other lawsuits.

102.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA are joint defendants in TWO other civil cases alleging police misconduct.[1]

103.    Defendant DETECTIVE DARNAY HARRIS is or was a defendant in EIGHT other civil cases alleging police misconduct.[2]

104.    Defendant DETECTIVE JAMES RIVERA is or was a defendant in TEN other civil cases alleging police misconduct.[3]

105.    Defendant THE CITY OF NEW YORK has paid at least $953,000 in the eleven of these cases that have terminated.

---

[1]    1:12-cv-00243-SLT-RLM Clark et al v. City of New York et al, 12-cv-00243-SLT-RLM, Date filed: 01/19/2012; 1:12-cv-00087-FB-RLM Myrie v. City of New York et al, Date filed: 01/06/2012.

[2]    Aviles et al v. The City of New York et al, 11-cv-05147-CBA-RML, Date filed: 11/13/2006, Date terminated: 03/27/2008; 1:12-cv-02548-SLT-RLM Conyers et al v. City of New York et al, Date filed: 05/21/2012; 1:08-cv-01110-CPS-CLP Fulcher et al v. The City of New York et al, Date filed: 03/18/2008, Date terminated: 11/24/2008; 1:06-cv-02044-CPS-RML Hicks et al v. The City of New York et al, Date filed: 05/02/2006, Date terminated: 08/20/2007; 1:08-cv-03307-JG-LB James v. City of New York et al, Date filed: 08/22/2008, Date terminated: 04/07/2010; 1:04-cv-04533-NG-SMG Kolar v. City of New York et al, Date filed: 10/21/2004, Date terminated: 09/16/2005; 1:10-cv-00061-JG-RLM Mouzon et al v. City of New York et al, Date filed: 01/07/2010, Date terminated: 08/10/2010.

[3]    1:12-cv-00253-KAM-RER Booker v. City of New York et al, Date filed: 01/19/2012; 1:11-cv-04874-KAM-LB Brewster v. The City of New York et al, Date filed: 10/06/2011; 1:12-cv-00255-KAM-RER Cornwell v. City of New York et al, Date filed: 01/19/2012; 1:12-cv-00251-KAM-RER Croney v. City of New York et al, Date filed: 01/19/2012; 1:12-cv-00257-KAM-RER Deleon v. City of New York et al, Date filed: 01/19/2012; 1:10-cv-02425-ARR-LB Hagley et al v. City of New York et al, Date filed: 05/27/2010, Date terminated: 01/27/2011; 1:10-cv-00191-DGT-SMG Lewis v. City of New York et al, Date filed: 01/15/2010, Date terminated: 12/28/2010; 1:09-cv-01859-RJD-RER Marable v. City of New York et al, Date filed: 05/04/2009, Date terminated: 07/12/2010; 1:10-cv-00227-JBW-RER McMillan v. City of New York et al, Date filed: 01/20/2010, Date terminated: 06/30/2010; 1:09-cv-02204-CBA-JO Milano v. The City of New York et al, Date filed: 05/26/2009, Date terminated: 01/05/2010.

106.    The 77th Precinct, where Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA were based on and about June 23, 2011, is rife with other examples of official misconduct enabled and ratified by Defendant THE CITY OF NEW YORK.

107.    Defendant THE CITY OF NEW YORK recently settled another civil suit brought by a New York City firefighter alleging harassment as false arrest by members of the 77th Precinct, including a Deputy Inspector, for $250,000.[4]

108.    In 2007, a group of officers from the 77th Precinct violently arrested a pair of civil rights lawyers who protested while those officers beat a handcuffed arrestee.[5] Defendant THE CITY OF NEW YORK recently settled the resulting civil rights action for $360,000.

109.    Like Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA, the lead defendant in the aforementioned case, Defendant Sgt. Steven Talvy, has been named in multiple other civil suits for official misconduct.[6]

110.    Several other officers working out of the 77th Precinct are also defendants in multiple civil suits: Joseph Tillotson (4 suits), Anthony Carozza (3), John Acconi (2),

---

[4]     Armaghan, Sarah, "City's 250G puts out Bravest's harass suit," The Daily News, March 02, 2012, http://articles.nydailynews.com/2012-03-02/news/31115016_1_social-club-charges-settlement-money.

[5]     Hales, Larry, "Police beat, arrest civil rights attorneys," Worker's World, June 28, 2007, http://www.workers.org/2007/us/warren-0705/.

[6]     1:08-cv-02587-SLT-VVP Moody v. City of New York et a, filed 06/27/08 closed 07/16/09; 1:08-cv-03815-ARR-RER  Warren v. City of New York et al, filed 09/18/08   closed 05/22/12; 1:08-cv-04595-RRM-VVP Franklin v. City of New York et al, filed 11/13/08 closed 11/10/09; 1:08-cv-04996-MKB-RML Sanders v. City Of New York et al, filed 12/11/08; 1:10-cv-04640-WFK-ALC Lywood v. City of New York et al, filed 10/08/10 closed 11/30/11.

Georgina Gonzalez (2)[7], Hector Morales (4),[8] Eric Campbell (2),[9] Jason Brunson (2),[10]

James Giblin (2).[11]   However, because there are no centralized public records of lawsuits

arising from NYPD officer misconduct, it is probable that there are far more such suits

involving officers from the 77th Precinct than those listed here.

### THE NYPD COMPELS ITS OFFICERS TO MEET UNLAWFUL ARREST QUOTAS, COMPELLING THOUSANDS OF BASELESS AND UNLAWFUL ARRESTS

111.    The NYPD places emphasis on numbers-driven street-level enforcement

of minor violations such as marijuana offenses.[12]

112.    Indeed, the use of an explicit quota system has been documented at the

77th Precinct, where the Plaintiffs were processed.[13]

---

[7]      1:11-cv-06010-WFK-VVP Findlay v. City of New York et al, filed 12/09/11; 11-cv-03553-ARR-VVP Pierre et al v. City of New York et al, filed 7/25/2011.
[8]      1:05-cv-04039-SLT-MDG Gillespie v. City of New York et al, filed 08/23/05 closed 04/03/06; 1:10-cv-02330-MKB-VVP Phillips v. The City of New York et al, filed 05/21/10; 1:08-cv-04146-KAM-ALC Garrett v. The City of New York et al, filed 10/09/08 closed 07/20/10; 1:08-cv-04996-MKB-RML Sanders v. City Of New York et al filed 12/11/08.
[9]      1:06-cv-06454-ENV-CLP Walker v. The City of New York et al, filed 12/05/06 closed 09/28/07; 1:10-cv-05878-FB-VVP Manswell v. City Of New York et al, filed 12/17/10 closed 09/13/11; 1:11-cv-04783-SJ-RML Dugan v. City of New York et al, filed 09/30/2011;
[10]      1:10-cv-05878-FB-VVP Manswell v. City Of New York et al, filed 12/17/10 closed 09/13/11; 1:11-cv-05231-RRM-JO Hunter et al v. City of New York et al, filed 10/26/11   closed 05/14/12
[11]      1:11-cv-00777-SJ-CLP Livingston et al v. City of New York et al, filed 02/16/11; 1:11-cv-05231-RRM-JO Hunter et al v. City of New York et al, filed 10/26/11   closed 05/14/12.
[12]      Defendants' [City of New York et al.] Local Civil Rule 56.1 Statement of Undisputed Facts, 08 CIV. 01034 (SAS) [SDNY], docket number 144, filed 2/24/2011, paragraphs 116-131.
[13]      Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

113.    This quota system is enforced by the very top levels of the NYPD through the Department's Compstat system.

114.    In a full-page ad on page 15 of the May 7, 2012 edition of the New York Daily News, The Patrolmen's Benevolent Association made clear that the quota pressure comes from the top.  Referring to these quotas, the ad is headlined: "Don't Blame the Cop, Blame NYPD Management."

115.    The NYPD uses Compstat to track such enforcement actions statistically.

116.    The NYPD holds weekly crime strategy meetings, "Compstat Meetings," at which such reports are discussed.[14]

117.    Compstat Meetings are attended by all commanders of Precincts, Police Service Areas, Transit Districts and other operational unit commanders within a given Patrol Borough, including the commanding officers and /or supervisors of precinct-based and specialized investigative units.[15]

118.    Also in attendance are representatives from the District Attorneys' Offices as well as Transit and Housing Bureau Commanders whose jurisdictions lie within the patrol borough, Crime Strategy Coordinators from other patrol boroughs, and ranking officers from a variety of support and ancillary units (such as the Legal Bureau which do not perform direct enforcement functions.).[16]

119.    The purpose of these Compstat Meetings is for the commanders to direct and modify street-level law enforcement policy based on Compstat statistics.[17]

---

[14]    Id.
[15]    Id.
[16]    Id.
[17]    Id.

120.    At these weekly Compstat Meetings, commanders either ratify that the statistics show that the NYPD's street-level activities are correctly implementing the NYPD's stated policies, or street-level deployments are modified to bring these activities in line with such policies.[18]

121.    In this way, the highest-level command of the NYPD exercises granular control over summonses and arrests for minor violations and quality of life offenses, as well as for stop, question and frisk activity.[19]

122.    What street-level police officers do is a direct result of these command-level policies.

123.    As the New York Daily News reported, NYPD supervisors give explicit instructions to street-level enforcement personnel that quantity, not quality, matters – promulgating a policy that comes from the very top of the NYPD hierarchy.[20]

124.    Individual officers have stepped forward to denounce the NYPD's use of quotas, which are illegal.[21]

125.    Officers that refuse to meet illegal quotas are subject to adverse employment actions and other retribution from their superiors.[22]

---

[18]    Id.

[19]    Id.

[20]    Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011.

[21]    Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011; Parascandola , Rocco, "An ex-Bronx cop Ex-Cop Sues City, Says Quotas Led to Firing: Ex-Bronx cop Vanessa Hicks suing city, says quotas led to axing,"
The New York Daily News, May 2, 2011; Parascandola, Rocco, "79th Precinct cops claim retribution: Nine officers say poor evaluations are payback from commander," The New York Daily News, April 10, 2012.

126.    The NYPD officially denies that it maintains and enforces quotas.

127.    However, the existence of this unconstitutional arrest quota custom and/or policy has been shown by the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn.[23]

128.    The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by WABC-TV/DT, in which a 41st precinct sergeant explains that each of his officers is held to a twenty summons per month, and one arrest per month, enforcement quota.[24]

129.    The existence of the aforesaid unconstitutional arrest quota custom and policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make quota-driven arrests as directed by their superiors even if they must void the arrests at the end of their shifts.[25]

## THE NYPD TOLERATES AND CONDONES WIDESPREAD PERJURY BY ITS OFFICERS

130.    NYPD policy rewards arrests that are based on false statements in criminal complaints sworn by NYPD officers.

---

[22]    See id.

[23]    Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

[24]    Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

[25]    Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town." Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

131.    As United States District Court Judge Jack Weinstein wrote: "Informal inquiry by [myself] and among the judges of this court, as well as knowledge of cases in other federal and state courts ... has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department."[26]

132.    By its nature, the true extent of police perjury has not been documented. The Mollen Commission in the 1990's found that police perjury was so pervasive that the police even had a word for it: "testilying."[27]

133.    Police perjury often involves lying about matters that are outcome determinative in litigation, and that go to the heart of a defendant's guilt or innocence.[28]

134.    Certain types of arrests occur with such frequency that the pattern and practice of police perjury has been at least partially exposed.

135.    In 2008, the New York Times documented at least 20 cases in federal court in which police provided false boilerplate testimony to justify searches and seizures of guns. These cases represented only that small fraction of cases in which the boilerplate testimony could be challenged with more than the word of the defendant.[29]

136.    Another category of arrest where police perjury has been documented is misdemeanor marijuana arrests. Where an officer encounters a person in possession of a small amount of marijuana, the officer can convert the arrest offense from a violation to a misdemeanor simply by testilying that the marijuana was in "plain view."

---

[26]    Marzulli, John, "Judge Jack Weinstein rips NYPD on false arrests as brothers sue for $10M over wrongful narcs bust," The New York Daily News, Nov. 30, 2009.
[27]    Cunningham, Larry, "Taking on Testilying: The Prosecutor's Response to In-Court Police Deception," *Criminal Justice Ethics* Winter/Spring 2009.
[28]    Id.
[29]    Weiser, Benjamin, "Police in Gun Searches Face Disbelief in Court," May 12, 2008.

137.    Each year the NYPD makes thousands of arrests for the possession of marijuana "in plain view." The overwhelming publicly available evidence shows that in the majority of these arrests, the marijuana was not in plain view when the person was arrested, and the basis of the charge was police perjury.[30]

138.    The NYPD has taken no steps to disincentivize – much less punish – the practice of perjury that underlies these arrests. Indeed, the number of such arrests continues to increase.[31]

139.    Nor has the NYPD taken any steps to punish police perjury in other contexts.

140.    There is a nexus between arrest quotas and the NYPD's toleration of police perjury: **police under pressure to make their quota of arrests make false arrests based on perjured accusations in order to do so**.[32]

141.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA are part of this pattern and practice of official perjury. Of the twenty civil cases arising from police misconduct in which they have been named as defendants, ALL involve allegations of false criminal complaints and other false statements by the police

---

[30]    Levine, Harry G. and Deborah Peterson Small, Marijuana Arrest Crusade: Racial Bias and Police Policy in New York City 1997-2007, New York Civil Liberties Union, April 2008, p. 5.

[31]    Parascandola, Rocco and Sarah Armaghan, "Arrests for low-level pot possession higher in 2011 than 2010, despite NYPD directive restricting busts Marijuana arrests near an all-time high," The New York Daily News, February 2, 2012; Beekman, Daniel, Study claims NYPD made hundreds of unlawful pot arrests," The New York Daily News, April 03, 2012.

[32]    Marzulli, John, "We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies," The New York Daily News, October 13th 2011.

defendants.  Two allege the outright fabrication of drug evidence to support false

complaints of a crime.[33]

### THE NYPD HAS A POLICY AND PRACTICE OF TOLERATING AND CONDONING POLICE MISCONDUCT

142.    When the Civilian Complaint Review Board substantiates claims of police

misconduct, The NYPD usually does **not** follow the board's recommendations that

officers guilty of misconduct be given the most serious penalty. From 2002 to 2010, he

said, the board recommended that 2,078 officers receive the most severe penalty. That

suggested discipline was given to only 151 officers.[34]  Thus, the Department has set a

policy that the consequences of misconduct will be mild or nonexistent.

143.    This pattern of toleration of violent police misconduct by the NYPD is a

policy and practice of long standing: in 2007, the New York Civil Liberties Union found

that the NYPD's practice if "condoning" police misconduct actually got worse over the

period of time studied (1994-2006).  The NYCLU researchers found:

> ♦    Of the more egregious cases of misconduct that have been
>
>       substantiated by the CCRB and referred to the NYPD for disciplinary
>
>       action between 2000 and 2004 – the last year for which complete data
>
>       [were then] available on disciplinary action – the police commissioner
>
>       has rejected the CCRB's findings in 63 percent of those cases. When

---

[33]    Bryant v. City of New York, 11-cv-05147-CBA-RML; Clark v. City of New York, 12-cv-00243-SLT-RLM.

[34]    Baker, Al, "Independent Agency Gets New Powers to Prosecute New York Police Officers," March 27, 2012.

discipline was imposed, it was strikingly lenient in light of the severity of the misconduct that has been documented by the CCRB.[35]

144.    Similar indifference to substantiated allegations of police misconduct was documented in a 1998 report by the Human Rights Watch.[36]

## THE NYPD IMPLEMENTS UNLAWFUL STRIP SEARCH POLICIES

145.    Brooklyn narcotics units and the 77th Precinct have been cited by the Civilian Complaint Review Board as implementing unconstitutional strip search practices.[37]

146.    Moreover, the CCRB stated: "the evidence our investigators uncovered in these cases indicates that officers may be conducting searches in violation of the Patrol Guide more frequently than CCRB statistics reveal."

147.    The CCRB made clear that NYPD officers are insufficiently trained in, among other things, the difference between a lawful search at a police facility incident to an arrest, and a strip search.

148.    The CCRB found that many officers were unaware that while the Patrol Guide instructs that items like shoes, jackets and hats may be removed in a routine search, removal of inner clothing is not permitted for such searches.

---

[35]    Mission Failure: Civilian Review of Policing in New York City (1994-2006), The New York Civil Liberties Union, September 2007.

[36] "Shielded from Justice: Police Brutality and Accountability in the United States," Human Rights Watch, June 1998.  Report incorporated by reference herein and available online at http://www.columbia.edu/itc/journalism/cases/katrina/Human%20Rights%20Watch/uspo html/toc.htm.

[37]    May 12, 2004 Letter from Hector Gonzalez (Chair) and Florence Finkle (Executive Director) of the Civilian Complaint Review Board to Police Commissioner Raymond Kelly.

149.    The CCRB informed the NYPD that its "officers described strip searches as routine for those brought to the police facility in their custody and justified them based on the need to search thoroughly for contraband."

150.    The CCRB reported that the unlawful strip searches "involved officers assigned primarily to narcotics units."

151.    The CCRB also reported that the officers did not understand and could not articulate the Constitutional standard governing strip searches.

152.    Indeed, Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA are part of this pattern and practice.  Of the 20 civil cases in which they have been named as defendants, EIGHT involve allegations of unlawful and invasive or strip searches without probable cause.[38]

## NYPD NARCOTICS UNITS HAVE A PATTERN AND PRACTICE OF UNLAWFUL INVASIONS OF PRIVATE PREMISES

153.    Brooklyn Police have an established pattern and practice of unlawfully and forcefully raiding private apartments.

154.    The Village Voice documented several such cases of warrantless home invasions by Brooklyn narcotics officers.[39]

155.    Indeed, Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA are part of this pattern and practice.  Of the 20 civil cases in which they

---

[38]    Booker v. City of New York, 12-cv-00253-KAM-RER; Fulcher v. City of New York, 08-cv-01110-CPS-CLP; Hicks v. City of New York, 06-cv-02044-CPS-RML; Aviles v. City of New York, 06-cv-06076-CPS-RML; Brewster v. City of New York, 11-cv-04874-KAM-LB; Conwell v. City of New York, 12-cv-00255-KAM-RER; Croney v. City of New York, 12-cv-00251-KAM-RER; Deleon v. City of New York, 12-cv-00257-KAM-RER.

[39]    Rayman, Graham, "NYPD Hit With Flurry of Bad Raid Lawsuits," The Village Voice, Feb. 15, 2012.

have been named as defendants, NINE involve allegations of unlawful and forcible

invasion of a private premises without probable cause.[40]

---

[40]        McMillan v. City of New York, 10-cv-00227-JBW-RER; Milano v. City of New York, 09-cv-02204-CBA-JO; Clark v. City of New York, 12-cv-00243-SLT-RLM; Myrie v. City of New York, 12-cv-00087-FB-RLM; Booker v. City of New York, 12-cv-00253-KAM-RER; Fulcher v. City of New York, 08-cv-01110-CPS-CLP; Hicks v. City of New York, 06-cv-02044-CPS-RML; Aviles v. City of New York, 06-cv-06076-CPS-RML; Bryant v. City of New York, 11-cv-05147-CBA-RML.

## FEDERAL CLAIMS

### FIRST CLAIM FOR RELIEF

### DEPRIVATION OF FEDERAL CIVIL RIGHTS
### UNDER 42 U.S.C. § 1983
### AGAINST DEFENDANT THE CITY OF NEW YORK, DETECTIVE DARNAY
### HARRIS, DETECTIVE JAMES RIVERA, DEFENDANT JOHN DOE POLICE
### OFFICERS 1-9, AND DEFENDANT SUPERVISING OFFICERS JOHN DOES 1-5
### AND COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5

156.    Plaintiffs repeat and reallege each and every allegation contained in the

above paragraphs with the same force and effect as if fully set forth herein.

157.    Defendant THE CITY OF NEW YORK and its agents, servants and

employees, including but not limited to Defendant THE CITY OF NEW YORK,

DETECTIVE DARNAY HARRIS, DETECTIVE JAMES RIVERA, Defendant JOHN

DOE POLICE OFFICERS 1-9, and Defendant SUPERVISING OFFICERS JOHN

DOES 1-5 (such individual defendants, collectively, the "ARRESTING

DEFENDANTS") and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5

(THE CITY OF NEW YORK, the ARRESTING DEFENDANTS, and COURT-

ASSIGNED POLICE OFFICERS JOHN DOES 1-5, collectively, "ALL

DEFENDANTS") deprived Plaintiffs of the rights, privileges and immunities guaranteed

to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth

Amendments to the Constitution of the United States of America, and in violation of 42

U.S.C. § 1983.

158.    All of the aforementioned acts of the ALL DEFENDANTS were carried

out under the color of state law.

159.    The acts complained of were carried out by the ARRESTING

DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 in

26

their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

160.    The acts complained of were carried out by ARRESTING DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

161.    ALL DEFENDANTS, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

162.    As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer injuries or harm.

163.    As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against ALL DEFENDANTS in a sum of money to be determined at trial.

<u>SECOND CLAIM FOR RELIEF</u>

<u>VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS<br>UNDER 42 U.S.C. §1983<br>ARISING FROM ILLEGAL STRIP SEARCHES</u>

164.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the ARRESTING DEFENDANTS performed manual searches of the Plaintiffs' genitals.

165.    These searches were performed with search warrants, and without probable cause.

166.    These searches were performed in an unreasonable manner.

167.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA unlawfully touched and fondled the Plaintiffs' genitals in the course of performing the searches conducted at 1664 Dean Street.

168.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA unreasonably performed the searches of the Plaintiffs conducted at 1664 Dean Street in the presence of the other Plaintiffs, and of numerous police officers.

169.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS conducted a second strip search at the 77th Precinct.

170.    These searches were also conducted without a warrant or probable cause.

171.    As a second invasive search of the Plaintiffs' genital area, this search was was entirely redundant, unnecessary and humiliating.

172.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

<u>THIRD CLAIM FOR RELIEF</u>

<u>VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS</u>
<u>UNDER 42 U.S.C. §1983</u>
<u>ARISING FROM WARRANTLESS ARREST WITHOUT PROBABLE CAUSE</u>

173.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS arrested Plaintiffs without warrants.

174.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS arrested Plaintiffs without having probable cause to do so.

175.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFF KEVIN HENRY'S FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' WARRANTLESS ENTRY INTO HIS HOME

176.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS violently broke down the door of Plaintiff KEVIN HENRY's home.

177.    Defendants did so without a warrant, and without probable cause.

178.    Defendants did so without knocking or announcing themselves.

179.    Defendants did so with their guns drawn.

180.    Defendants unlawfully entered and searched Plaintiff KEVIN HENRY's home.

181.    Defendant's damaged Plaintiff KEVIN HENRY's property, and violated his right to be secure and safe in the privacy of his home.

182.    As a result, Plaintiff KEVIN HENRY was harmed or injured, and seeks compensation in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' MALICIOUS PROSECUTION OF PLAINTIFFS

183.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA instituted criminal proceedings against the Plaintiffs.

184.    These prosecutions ended in the Plaintiffs' favor.

185.    There was no probable cause to initiate these prosecutions.

186.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA acted maliciously in initiating the proceedings.

187.    Plaintiffs were deprived of their liberty as a result.

188.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' USE OF EXCESSIVE FORCE

189.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS placed Plaintiffs in handcuffs.

190.    The handcuffs were too tight, and were left on for an unreasonable period of time.

191.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS placed Plaintiffs in a van without air conditioning or ventilation, and the Plaintiffs were subjected to extremely uncomfortable and dangerous heat conditions inside the vehicle for an unreasonable period of time.

192.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' FABRICATION OF EVIDENCE AND PERJURY

193.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS made false statements, including false sworn criminal complaints, alleging that the Plaintiffs illegally possessed marijuana.

194.    Defendants DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA and the other ARRESTING DEFENDANTS fabricated evidence to support their false claims.

195.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

EIGHTH CLAIM FOR RELIEF

VIOLATION OF PLAINTIFF STEFAN JOHN'S EIGHTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM PLAINTIFF'S INJURY WHILE IN CUSTODY

196.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 placed Plaintiff Stefan John in a pre-arraignment holding area at Central Booking.

197.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 placed Plaintiff STEFAN JOHN in a pre-arraignment holding area together with two individuals who, because of their open and obvious Nazi or white-supremacist affiliation, presented a clear danger to other detainees.

198.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 permitted these white-supremacists to attack Plaintiff STEFAN JOHN.

199.    After the attack commenced, Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 deliberately delayed coming to the aid of Plaintiff STEFAN JOHN.

200.    As a result, Plaintiff STEFAN JOHN was injured, and seeks compensation in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFF STEFAN JOHN'S CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' FAILURE TO INTERVENE

201.    The Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff STEFAN JOHN's behalf to prevent the violation of his constitutional rights by the two white-supremacist detainees who attacked him.

202.    The Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK failed to intervene on Plaintiff STEFAN JOHN's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

203.    The Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK failed to intervene on Plaintiff STEFAN JOHN'S behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

204.    As a result of the aforementioned conduct of the individual defendant, Plaintiff STEFAN JOHN'S constitutional rights were violated.

205.    As a result, Plaintiff STEFAN JOHN was injured, and seeks compensation in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. §1983 ARISING FROM DEFENDANTS' FAILURE TO INTERVENE

206.    Each of the ARRESTING DEFENDANTS and THE CITY OF NEW YORK had an affirmative duty to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights by the other ARRESTING DEFENDANTS.

207.    The ARRESTING DEFENDANTS and THE CITY OF NEW YORK failed to intervene on Plaintiffs' behalf despite having had a realistic opportunity to do so.

208.    The ARRESTING DEFENDANTS and THE CITY OF NEW YORK failed to intervene on Plaintiffs' behalf despite having substantially contributed to the circumstances within which the plaintiffs' rights were violated by their affirmative conduct.

209.    As a result of the aforementioned failure to intervene, Plaintiffs' constitutional rights were violated.

210.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

<u>ELEVENTH CLAIM FOR RELIEF</u>

<u>FAILURE TO TRAIN SUPORDINATES AGAINST
SUPERVISING OFFICERS JOHN DOES 1-5</u>

211.    SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA had a long history of violating the constitutional rights of people with whom these detectives came into contact.

212.    Among other things, SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA were the subject of more than 20 lawsuits alleging that these detectives committed serious misconduct including violations of constitutional rights.

213.   SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA needed training in how to refrain from further such misconduct.

214.   SUPERVISING OFFICERS JOHN DOES 1-5 were deliberately indifferent to DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA's need for such training.

215.   As a result, Plaintiffs were harmed or injured.

### TWELFTH CLAIM FOR RELIEF

### FAILURE TO SUPERVISE SUPORDINATES AGAINST SUPERVISING OFFICERS JOHN DOES 1-5

216.   SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA had a long history of violating the constitutional rights of people with whom these detectives came into contact.

217.   Among other things, SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA were the subject of more than 20 lawsuits alleging that these detectives committed serious misconduct including violations of constitutional rights.

218.   SUPERVISING OFFICERS JOHN DOES 1-5 knew or should have known that DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA needed supervision to prevent them from committing further such misconduct.

219.   SUPERVISING OFFICERS JOHN DOES 1-5 failed to effectively discipline DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA for their misconduct.

220.     SUPERVISING OFFICERS JOHN DOES 1-5 failed to correct

DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA for their

unconstitutional policing practices.

221.     As a result, Plaintiffs were harmed or injured, and seek compensation in

an amount to be determined at trial.

THIRTEENTH CLAIM FOR RELIEF

MUNICIPAL LIABILITY UNDER <em>MONELL</em><br>
UNDER 42 U.S.C. §1983<br>
ARISING FROM UNCONSTITUTIONAL MUNICIPAL POLICIES AND<br>
CUSTOMS

222.     Defendant THE CITY OF NEW YORK and the NYPD established

official policies directing and promoting unconstitutional practices by NYPD officers,

and have tolerated, condoned and permitted widespread unconstitutional practices by

NYPD officers, including the Defendants in this case.

223.     Defendant THE CITY OF NEW YORK indemnifies and shields NYPD

officers who repeatedly and habitually violate constitutional rights, such as Defendants

DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA.

224.     Defendant THE CITY OF NEW YORK fails to discipline police

misconduct, thereby insuring that such misconduct continues.

225.     Defendant THE CITY OF NEW YORK fails to control NYPD Precincts

or subdivisions, such as the 77th Precinct and Brooklyn Narcotics, in which police

misconduct is especially prevalent.

226.     Defendant THE CITY OF NEW YORK implements quotas for individual

officers' arrests, thus incentivizing or compelling unconstitutional misconduct by

individual officers.

227.    Defendant THE CITY OF NEW YORK tolerates and condones police perjury.

228.    Defendant THE CITY OF NEW YORK implements, tolerates, and fails to punish unlawful strip search practices.

229.    Defendant THE CITY OF NEW YORK implements, tolerates, and fails to punish unlawful, warrantless home invasions by police.

230.    These policies and practices caused the unlawful conduct of the ARRESTING DEFENDANTS.

231.    As a result, Plaintiffs' constitutional rights were violated.

232.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

## PENDENT STATE CLAIMS

### FOURTEENTH CLAIM FOR RELIEF

#### BATTERY
#### AGAINST DETECTIVE DARNAY HARRIS AND DETECTIVE JAMES RIVERA, AND THE ARRESTING DEFENDANTS

233.    DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA, and the other ARRESTING DEFENDANTS intentionally made bodily contact with Plaintiffs in a manner which was offensive in nature.

234.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

### FIFTEENTH CLAIM FOR RELIEF

#### ASSAULT
#### AGAINST DETECTIVE DARNAY HARRIS AND DETECTIVE JAMES RIVERA, AND THE ARRESTING DEFENDANTS

235.    DETECTIVE DARNAY HARRIS and DETECTIVE JAMES RIVERA, and the ARRESTING DEFENDANTS intentionally threatened imminent, offensive, and harmful contact with Plaintiffs.

236.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

SIXTEENTH CLAIM FOR RELIEF

NEGLIGENCE
AGAINST COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 AND
DEFENDANT THE CITY OF NEW YORK

237.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK were negligent in permitting white-supremacist detainees to be held together with other detainees, including African American detainees such as PLAINTIFF STEFAN JOHN.

238.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK were negligent in failing to take precautions to ensure that these white-supremacist detainees did not commit acts of violence against other detainees.

239.    Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK were negligent in failing to stop these white-supremacist detainees from injuring Plaintiff STEFAN JOHN.

240.    PLAINTIFF STEFAN JOHN's injury at the hands of these white-supremacist detainees was a foreseeable and a direct result of the negligence of Defendants COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 and Defendant THE CITY OF NEW YORK.

241.    As a result, Plaintiff STEFAN JOHN was injured, and seeks compensation in an amount to be determined at trial.

## SEVENTEENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR AGAINST
### DEFENDANT THE CITY OF NEW YORK

242.    Defendants ARRESTING DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 were at all times acting within the scope of their employment as employees of Defendant THE CITY OF NEW YORK.

243.    The actions of Defendants ARRESTING DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5 were generally foreseeable and a natural incident of their employment by Defendant THE CITY OF NEW YORK.

244.    As a result of the actions of Defendants ARRESTING DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5, Plaintiffs were harmed or injured.

245.    Defendant THE CITY OF NEW YORK is liable for the actions of Defendants ARRESTING DEFENDANTS and COURT-ASSIGNED POLICE OFFICERS JOHN DOES 1-5.

246.    Plaintiffs accordingly seek compensation from Defendant THE CITY OF NEW YORK in an amount to be determined at trial.

## EIGHTEENTH CLAIM FOR RELIEF

### NEGLIGENT HIRING AND RETENTION AGAINST
### DEFENDANT THE CITY OF NEW YORK

247.    Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA.

248.    Defendant THE CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA to engage in the wrongful conduct heretofore alleged in this Complaint.

249.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

### NINETEENTH CLAIM FOR RELIEF

### NEGLIGENT TRAINING AND SUPERVISION AGAINST DEFENDANT THE CITY OF NEW YORK

250.    Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA.

251.    Defendant THE CITY OF NEW YORK failed to use reasonable care in the training and supervision of the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA, permitting and enabling them to engage in the wrongful conduct heretofore alleged in this Complaint.

252.    As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

## TWENTIETH CLAIM FOR RELIEF

### NEGLIGENT TRAINING AND SUPERVISION AGAINST DEFENDANT SUPERVISING OFFICERS JOHN DOES 1-5

253.   SUPERVISING OFFICERS JOHN DOES 1-5 failed to use reasonable care in the training and supervision of ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA, permitting and enabling them to engage in the wrongful conduct heretofore alleged in this Complaint.

254.   As a result, Plaintiffs were harmed or injured, and seek compensation in an amount to be determined at trial.

### THIRTIETH CLAIM FOR RELIEF

### PUNITIVE DAMAGES AGAINST ALL DEFENDATS

255.   The actions of the SUPERVISING OFFICERS JOHN DOES 1-5 and the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA constituted intentional violations of federal law.

256.   The actions of the SUPERVISING OFFICERS JOHN DOES 1-5 and the ARRESTING DEFENDANTS, in particular DETECTIVE DARNEY HARRIS and DETECTIVE JAMES RIVERA were motivated by evil motive or intent, or involved involves reckless or callous indifference to the federally protected rights of the Plaintiffs.

257.   As a result, Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial.

40

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

    [a] Invoke pendent party and pendent claim jurisdiction.

    [b] Award appropriate compensatory and punitive damages.

    [c] Empanel a jury.

    [d] Award attorney's fees and costs.

    [e] Award such other and further relief as the Court deems to be proper and in the interests of justice.


DATED:     New York, New York
              June 22, 2012


                           Respectfully submitted,

                           DAVID A. THOMPSON, ESQ.
                           Stecklow Cohen & Thompson
                           10 SPRING STREET – SUITE 1
                           New York, New York 10012
                           [212] 566-8000
                           [212] 202-4952/FAX
                           ATTORNEYS FOR PLAINTIFFS